| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, STATE OF COLORADO** <br> 100 Jefferson County Parkway <br> Golden, CO 80401 <br> Telephone: (720) 772-2500 | DATE FILED: April 22, 2022 12:18 PM <br> FILING ID: 868E2659F0E60 <br> CASE NUMBER: 2022CV30459 |
| **Plaintiff:** AUTUMN HESS, an individual, <br><br> v. <br><br> **Defendants:** STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, AN ILLINOIS CORPORATION. | ▲ Court Use Only ▲ |
| *Attorneys for Plaintiff* <br> Peter A. McClenahan, No. 41044 <br> Thomas Neville, No. 35011 <br> OGBORN MIHM, LLP <br> 1700 Broadway, Suite 2700 <br> Denver, Colorado 80203 <br> Phone Number: (303) 592-5900 <br> FAX Number: (303) 592-5901 <br> Email: Peter.McClenahan@OMTrial.com <br> Thomas.Neville@OMTrial.com | Case No: <br><br> Div: <br><br> Courtroom: |
| **COMPLAINT AND JURY DEMAND** | |

## PARTIES AND JURISDICTION

1. Plaintiff, Autumn Hess ("Ms. Hess"), is a resident of Jefferson County in the State of Colorado.

2. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is a foreign corporation, incorporated under the laws of the State of Illinois, with its principal place of business at One State Farm Plaza, Bloomington, IL 61710, and is registered to do business in the State of Colorado.

3. Defendant State Farm's registered address for service in Colorado is 1900 W. Littleton Boulevard, Littleton, CO 80120, United States.

1

4. The motor vehicle collision giving rise to this action occurred in Adams County in the State of Colorado on December 29, 2020.

5. State Farm's denial of the insurance claim which is the subject of this action occurred in Denver County in the State of Colorado.

6. The amount in controversy exceeds $100,000.00.

7. Venue in this Court is proper pursuant to C.R.C.P. 98(c).

## GENERAL ALLEGATIONS

8. At all relevant times, Ms. Hess was insured under a State Farm insurance policy, policy number 495 3473-CO1-06 (the "Insurance Policy"), which was in full force and effect at the time of the incident giving rise to this action.

9. Ms. Hess timely and faithfully paid her monthly premiums to State Farm for the Insurance Policy.

10. Ms. Hess's Insurance Policy with State Farm includes underinsured motorist ("UIM") coverage.

11. Ms. Hess's Insurance Policy with State Farm provides UIM coverage with policy limits of $100,000.

### *The Underlying Collision*

12. On December 29, 2020, Ms. Hess was driving her teenaged daughter to the DMV so that her daughter could obtain her driver's license.

13. On December 29, 2020, at approximately 2:30 p.m., Ms. Hess was stopped at a red light at the intersection of 92nd Avenue and Lowell Boulevard in Adams County, Colorado.

14. Ms. Hess was driving her 2019 Volkswagon Atlas and was wearing her seatbelt.

15. At that time, Matthew Moffet ("Mr. Moffet") crashed his 2012 Acura MDX SUV

into the rear of Ms. Hess's vehicle, causing Ms. Hess injuries (the "Subject Collision").

16. Police arrived on the scene and issued a citation to Mr. Moffett for "Following Too Closely," in violation of Section 42-4-1008, C.R.S.

17. Mr. Moffett was one-hundred percent at fault for the Subject Collision.

18. As a direct and proximate result of Mr. Moffet's negligence, Ms. Hess sustained severe and permanent bodily injuries.

19. Ms. Hess received extensive medical treatment for the injuries she sustained in the Subject Collision from many different medical providers throughout the course of 2021 and 2022.

20. As a direct and proximate result of Mr. Moffet's negligence, Ms. Hess incurred, and will continue to incur, medical, pharmaceutical and rehabilitative care and treatment expenses.

21. As a direct and proximate result of Mr. Moffet's negligence, Ms. Hess was unable to work during 2021.

22. Mr. Moffet maintained auto insurance with Progressive with policy limits of $25,000, the minimum amount legally permitted in Colorado.

23. Mr. Moffet's acts, omissions and negligent conduct caused Ms. Hess to sustain damages, past and future, including, but not limited to:

a. Past and future medical and related expenses;

b. Past and future lost wages;

c. Past and future permanent physical impairment and disfigurement;

d. Future medical care, pharmaceutical and rehabilitation expenses; and

e. Past and future pain, suffering, emotional distress and loss of enjoyment of life.

*Settlement of Bodily Injury Claim for Policy Limits*

24. On September 27, 2021, State Farm gave Ms. Hess permission to settle with Mr. Moffett and his insurance company, Progressive, for the policy limits of $25,000.

25. On September 28, 2021, Ms. Hess settled her claims against Mr. Moffett for the $25,000 policy limits. Shortly thereafter, Progressive sent Ms. Hess a check for $25,000.

*Underinsured Motorist Claims*

26. On May 5, 2021, counsel for Ms. Hess wrote to State Farm adjustor Ashley Chockley and put State Farm on notice of Ms. Hess's potential UIM claim (due to the $25,000 policy limits maintained by Mr. Moffet).

27. On May 6, 2021, counsel for Ms. Hess wrote to State Farm and provided State Farm with extensive medical records reflecting the medical treatment that Ms. Hess had undergone as a result of the December 29, 2020 collision.

28. On May 6, 2021, counsel for Ms. Hess wrote to State Farm and provided State Farm with medical bills totaling more than $230,000 incurred as a result of the medical treatment that Ms. Hess had undergone as a result of the December 29, 2020 collision.

29. On June 8, 2021, upon State Farm's request, counsel for Ms. Hess wrote to State Farm and provided State Farm with a fully executed medical record Release for Ms. Hess so that State Farm could obtain whatever medical records that State Farm deemed necessary in order to timely adjust Ms. Hess's UIM claim.

30. In addition to providing the medical record Release, throughout June, July, August and September of 2021, counsel for Ms. Hess continued to provide State Farm with hundreds and hundreds of pages of medical records and billing records reflecting the ongoing medical treatment that Ms. Hess was receiving as a result of the December 29, 2020 collision, as well as

4

medical summaries and billing summaries.

33. On November 4, 2021, counsel for Ms. Hess emailed State Farm and stated that the past medical bills incurred by Ms. Hess as a result of the December 29, 2020 collision were in excess of $300,000.

32. On January 17, 2022, counsel for Ms. Hess submitted a formal demand letter to State Farm for the $100,000 in UIM coverage.

33. The January 17, 2022 demand letter again set forth detailed descriptions of the medical care that Ms. Hess had received as a result of the December 29, 2020 collision as well as exhibits consisting of the medical records and billing records.

34. The January 17, 2022 demand letter also included written letters and emails from Ms. Hess's various medical providers that specifically stated that the medical care and treatment that they provided to Ms. Hess was caused by the December 29, 2020 collision.

35. A true and correct copy of the January 17, 2022 demand letter sent to State Farm by counsel for Ms. Hess is attached hereto as **Exhibit 1**.

36. On February 15, 2022, State Farm wrote to counsel for Ms. Hess and stated that none of the $100,000 in UIM coverage would be provided to Ms. Hess.

### *Ms. Hess's Medical Treatment from the December 29, 2020 collision*

37. State Farm was provided with all of the following records of medical treatments and bills, as well as the referenced letters and emails from Ms. Hess's treating health care providers.

38. As a result of the December 29, 2020 collision, Ms. Hess underwent two different surgical procedures on her jaw, a jaw MRI, and multiple botox injections into her jaw muscles. Oral Maxillofacial Surgeons Dr. Glasgow and Dr. Lemieux performed these procedures.

5

39. Ms. Hess's oral surgeon, Dr. Lemieux, provided a letter stating, "It is my medical opinion that Ms. Autumn Hess was in a motor vehicle collision in 2020 that has caused temporomandibular joint dysfunction including arthralgia, internal derangement and myofascial pain with muscle spasms. These conditions have resulted in multiple procedures throughout 2021."

40. A few days after the December 29, 2020 collision, Ms. Hess sought treatment at the emergency department at UC Health Broomfield Hospital because she was experiencing chest pain and heart palpitations as a result of the collision. There, at the ED, she was evaluated for heart issues.

41. On December 31, 2020, two days after the collision, Ms. Hess sought treatment from her primary care physician Julie Paranka, MD at UC Health. Ms. Hess complained of the injuries that she sustained in the December 29, 2020 collision and continued treating with Dr. Paranka for those injuries throughout 2021. As set forth in the medical records, as a result of the injuries sustained in December 29, 2020 collision, Dr. Paranka ordered a chest CT for chest pain and a brain MRI due to issues with memory and word finding difficulties. Dr. Paranka also referred Ms. Hess to neurology consult for additional testing.

42. The medical records from the March 3, 2021 neurology consult state, "Per last office visit family medicine Dr. Paranka: Patient has h/o multiple head injuries with concussions. Has been having some issues with memory and word finding, but got worse after MVA end of December 2020. She states that she can have a conversation and forget what it was about within minutes. She stumbles over words - getting stuck on first syllable, which she repeats a few times but cannot finish the word. Sometimes she can't think of the word at all." "She endorses problems with word finding, difficulty trying to get the right word out. Sometimes she stutters.

6

Symptoms have been going on since her MVA in Dec of 2020."

43. Following the December 29, 2020 collision, Ms. Hess underwent two sacroiliac injections and a CT scan with Dr. Isser-Sax, a physical medicine and rehabilitation physician. Dr. Isser-Sax's medical records make clear that the treatment was necessitated by the December 29, 2020 collision.

44. As a result of the December 29, 2020 collision, Ms. Hess was required to undergo a surgery on her right knee performed by Rachel Frank, MD and Kevin Shinsako, PA on February 2, 2021, two MRIs on her right knee, and then a second surgery on her right knee on November 5, 2021.

45. The medical records regarding the right knee injury and subsequent medical treatment state: "Patient has a notable history of having had previous injury that was resolved previous to the onset of recurrent knee pain. Patient previous to December 29, 2020 was doing well of her right and left knee. Unfortunately, due to a December 29, 2020 accident she had aggravation of right knee essentially inciting necessity for evaluation and subsequent treatment."

46. On March 17, 2021, Ms. Hess underwent a spine fusion surgery at UC Health Spine Center at Anschutz Hospital.

47. Nurse Practitioner Susan Estes, who supervises and directs Ms. Hess's medical treatment at the UC Health Spine Center, wrote a letter stating, "Ms. Autumn Lorrae Hess is a patient of ours at The Spine Center. She had a prior L4-S1 fusion and hardware removal and had a non-union. She was in a rear end car accident Dec 2020 that exacerbated her pre-existing back pain. In my opinion, the trauma from the car accident took a pre-existing condition and made it worse. Because of her pre-existing condition she was likely vulnerable to potential additional injury. Because of the worsened, debilitating pain after the Dec 2020 car accident, she had

7

surgery to revise the fusion L4-S1 both through an anterior and a posterior approach on 3/17/21 by Dr. Patel."

48. At no time during its investigation of Ms. Hess's claim for UIM benefits did State Farm request an independent medical examination of Ms. Hess.

49. Ms. Hess has the following four categories of damages arising from the December 29, 2020 collision that State Farm was required to evaluate and adjust in a timely fashion:

   a. All of her medical bills caused in whole or in part by the December 29, 2020 collision;

   b. All of her future medical expenses caused in whole or in part by the December 29, 2020 collision;

   c. All of her past lost wages and future lost wages caused in whole or in part by the December 29, 2020 collision; and

   d. All of her non-economic pain and suffering damages caused in whole or in part by the December 29, 2020 collision.

50. Ms. Hess's past medical expenses alone are in excess of $330,000. As of the date of this Complaint and Jury Demand, State Farm has refused to provide any UIM benefits whatsoever to Ms. Hess. Therefore, State Farm has taken the position that the four categories of damages listed in Paragraph 29 above do not total more than $25,000 (the amount of the bodily injured settlement paid by the insurance company for the at-fault driver).

**FIRST CLAIM FOR RELIEF**
**(Common Law Bad Faith Breach of Contract)**

51. Plaintiff incorporates the allegations in Paragraphs 1 through 51, as if fully set forth herein.

52. State Farm owes duties to Autumn Hess under the Insurance Policy's implied covenant of good faith and fair dealing, wherein State Farm agreed that it would, in good faith and in the exercise of fair dealing, deal with Autumn Hess fairly and honestly, and do nothing to

8

impair, interfere with, hinder, or potentially injure Autumn Hess's rights to receive benefits of the insurance contract. State Farm has breached its duty of good faith and fair dealing by, among other things:

   a. Disregarding information in Autumn Hess's medical records and medical bills and other provided materials regarding the nature and extent of the medical treatment she received for the injuries caused by the Subject Collision;

   b. Unreasonably delaying and denying the adjusting of Autumns Hess's UIM claim; and

   c. Failing to effectuate prompt, fair, and equitable settlements of claims in which liability is clear.

   d. Compelling Autumn Hess to institute litigation to recover amounts due under the Insurance Policy; and

   e. Other acts of willful and unreasonable handling as will be shown at the trial hereof.

53. State Farm has acted unreasonably in adjusting Autumn Hess's claim for UIM benefits by disregarding information provided by Autumn Hess that is relevant to her claim for UIM benefits and by failing to investigate her claim in a timely fashion.

54. State Farm knew, or should have known, its conduct has been unreasonable.

55. As a proximate result of State Farm's actions, Autumn Hess has suffered damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Violation of Sections 10-3-1115, 1116, C.R.S.)**

56. Plaintiff incorporates the allegations in Paragraphs 1 through 55, as if fully set forth herein.

57. State Farm is engaged in the business of insurance.

58. State Farm has unreasonably delayed payment of this claim for UIM benefits to Autumn Hess, a first party claimant.

9

59. State Farm has unreasonably denied payment of UIM benefits to Autumn Hess, a first party claimant.

60. State Farm's delay and denial of Autumn Hess's claim for UIM benefits is without a reasonable basis because, *inter alia*, State Farm disregarded relevant information in Autumn Hess's medical records and other provided materials regarding the nature and extent of the medical treatment she received for the injuries sustained in the Subject Collision and failed to timely adjust the claim by using the provided medical record Release to obtain medical records.

61. Autumn Hess has suffered damages as a result of State Farm's unreasonable delay, and bad faith conduct, in the form of economic and non-economic damages to be proven at trial.

62. Pursuant to C.R.S. § 10-3-1116, Autumn Hess brings this action to recover attorney fees, court costs, and a multiple amount of the covered benefit.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)

63. Plaintiff incorporates the allegations in Paragraphs 1 through 62, as if fully set forth herein.

64. The Insurance Policy issued by State Farm provided coverage to Autumn Hess for, among other things, UIM benefits.

65. Autumn Hess made a claim for UIM insurance benefits as may be paid pursuant to the Insurance Policy providing coverage to Autumn Hess for losses caused by the negligence of an under-insured motorist.

66. Autumn Hess has performed all conditions and covenants to be performed on her part under the contract.

67. State Farm has refused to provide coverage to Autumn Hess for her injuries and

damages pursuant to the terms of the Insurance Contract, thereby breaching the same.

68. State Farm's breach of the Insurance Policy has resulted in damages to Autumn Hess.

69. Autumn Hess seeks benefits for damages and losses, together with pre-judgment interest and costs.

WHEREFORE, Autumn Hess requests this Court to enter judgment against Defendant State Farm for actual damages, statutory damages, pre-judgment interest, attorneys' fees, costs, and such other relief as this Court deems proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED this 22nd day of April, 2022.

        **OGBORN MIHM, LLP**

        By: *s/ Peter A. McClenahan*
           Peter A. McClenahan, Reg. No. 41044
           Thomas Neville, Reg. No. 35011
           OGBORN MIHM, LLP
           1700 Broadway, Suite 1900
           Denver, CO 80290
           Telephone: 303-592-5900
           Facsimile: 303-592-5910

        *Attorneys for Plaintiff*

Plaintiff's Address:
10219 Oak Street
Westminster, CO 80021