IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 22-cv-01397-CMA-MEH

AUTUMN HESS,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

---

## ORDER AFFIRMING AND ADOPTING
## THE RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before the Court on the December 15, 2023, Report and Recommendation of United States Magistrate Judge. (Doc. # 93.)[1] For the following reasons, the Court affirms and adopts the Recommendation.

### I.    BACKGROUND

This uninsured/underinsured motorist ("UIM") case involves two of Plaintiff Autumn Hess's motor vehicle accidents. Although Ms. Hess's claims technically arise from an accident that occurred in December 2020, understanding the parties' dispute

---

[1] Magistrate Judge Michael E. Hegarty issued the decision as a Recommendation rather than an order because the denial of a motion to amend in this context would foreclose State Farm from asserting an affirmative defense. (Doc. # 93 at 5 n.1.)

requires brief mention of a separate motor vehicle accident from October 2017 and a discovery dispute, both of which are briefly summarized in the next two subsections.

**A.     PRE-LITIGATION MOTOR VEHICLE ACCIDENTS**

On October 13, 2017, a two-vehicle accident left Ms. Hess with considerable injuries. (Doc. # 58-1 at 56.) State Farm insured the driver at fault, so as State Farm processed Ms. Hess's concomitant insurance claim, State Farm obtained thousands of pages of Ms. Hess's medical records. (Doc. # 93.) The parties settled that claim in 2019. (Doc. # 61-3 at 1.)

Shortly thereafter, Ms. Hess purchased her own State Farm motor vehicle insurance policy. (Doc. # 58-1 at 1.) Said policy covered her for UM/UIM claims up to $100,000. (Doc. # 61-3 at 1.) The policy also contained a "Concealment of Fraud" provision that would void Ms. Hess's coverage if she "made false statements with the intent to conceal or misrepresent any material fact or circumstance related to any claim" brought under the policy. (Doc. # 58-1 at 48.)

On December 29, 2020, Ms. Hess was in another car accident. (Doc. # 61-3 at 2.) The negligent motorist settled his claims with Ms. Hess by offering her his insurance policy's bodily injury coverage limit—$25,000. (Doc. # 93 at 2.) Because her medical bills exceeded that amount, Ms. Hess filed a UM/UIM claim with State Farm. As part of her claim, Ms. Hess signed and provided State Farm with a medical release form that empowered State Farm to "obtain the medical records that [it] may need in order to

adjust her UM/UIM claim in a timely fashion." (Doc. # 61-10 at 6.) State Farm received the release on June 4, 2021. (Doc. # 61-41 at 28.)

State Farm never approved Ms. Hess's claim because State Farm concluded that her medical bills address injuries caused by the 2017 accident, not the 2020 accident. *E.g.*, (Doc. # 101 at 2.) Consequently, Ms. Hess filed this lawsuit, asserting state law claims for bad faith breach of contract, unreasonable delay and denial of coverage, and breach of contract generally. (Doc. # 13 at 9–11.) State Farm removed this case to this Court on June 2, 2022. (Doc. # 1.)

**B.     DISCOVERY DISPUTE**

In November 2022, via written discovery request, State Farm asked Ms. Hess to "describe . . . each action/claim" that Ms. Hess had "***brought***" for personal injury compensation, which expressly included "federal disability benefits" and "disability insurance." (Doc. # 82-2 at 2 (emphasis added).) In response, Ms. Hess stated that she had never "***received***" disability insurance benefits, federal Social Security Disability Income ("SSDI") benefits, or worker's compensation. (Doc. # 82-2 at 2 (emphasis added).) This answer was undoubtedly "evasive at best." (Doc. # 93 at 3). Ms. Hess had in fact applied for SSDI benefits one month before her second accident, in November 2020. *E.g.*, (Doc. # 93 at 2.) So, although Ms. Hess's answer was correct—the Social Security Administration ("SSA") denied her SSDI application—she obviously avoided directly responding to the question by omitting that she had at least attempted to claim SSDI benefits.

It was not until March 20, 2023—during Ms. Hess's deposition in this case—that State Farm learned of the 2020 SSDI application. (Doc. # 82-3 at 2.) After Ms. Hess's

3

deposition, State Farm quickly requested that Ms. Hess's counsel in this case[2] provide State Farm with the entire SSDI application. (Doc. # 82 at 4.) Plaintiff's counsel complied on March 31, 2023, by producing "approximately 6,000 pages" from the SSDI file. *Id.* But upon receipt of these records, State Farm did not move to amend its answer to bring a counterclaim for fraud. Instead, because those approximately 6,000 pages did not comprise the entire administrative record, State Farm began "continuously request[ing]" additional files from Ms. Hess's UM/UIM attorney. *Id.*

**C.   THE MOTION AND ITS RECOMMENDED DISPOSITION**

On November 28, 2023, State Farm moved to amend its answer. (Doc. # 82.) The motion proposed adding an affirmative defense of fraud based on Ms. Hess's discovery response. (Doc. # 82 at 2 (alleging that Ms. Hess voided the policy by violating the fraud clause because she "conceal[ed] the fact that she had applied for" SSDI).)

The motion addressed the eight-month gap between State Farm learning that Ms. Hess applied for SSDI and State Farm formally moving to amend the pleadings. Essentially, State Farm claimed that pleading fraud depended on acquiring Ms. Hess's complete SSDI application. *Id.* at 4–5. Notably, State Farm's only efforts to acquire the application were repeated requests made directly to Ms. Hess's counsel in this case. *See id.* The motion did not assert that State Farm made use of its signed medical release to subpoena the SSA for Ms. Hess's SSDI application. Nor did State Farm

---

[2] Ms. Hess retained a separate attorney to administratively appeal the denial of her SSDI application. (Doc. # 98-1 at 19.)

4

contact Ms. Hess's SSDI attorney for the records. The motion also insisted that Ms. Hess would not suffer any prejudice from State Farm being allowed to amend its pleadings. *Id.* at 5–6.

The Recommendation rejected both arguments. It found State Farm's delay inexplicable because State Farm failed to adequately explain why alleging fraud required anything more than Ms. Hess's confession that she had indeed applied for SSDI benefits. (Doc. # 93 at 4.) The Recommendation also found that amendment would prejudice Ms. Hess because, with discovery now closed, she cannot conduct any discovery on the fraud issue and would have considered the prospects of settlement differently had this affirmative defense been in play during mediation. *Id.* at 5. State Farm timely objected to the Recommendation; Plaintiff Autumn Hess responded. (Docs. ## 98, 101.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 636(a)(1)(B), this Court may designate a magistrate judge to consider dispositive motions and submit recommendations to the Court. When a magistrate judge submits a recommendation, the Court must "determine *de novo* any part" of the Recommendation to which either party has properly objected. Fed. R. Civ. P. 72(b)(3).

## III. DISCUSSION

State Farm objects to the Recommendation for five reasons, none of which address the salient problem—State Farm's inadequate explanation for delay. As detailed below,

none of State Farm's objections cause this Court to doubt the Recommendation's reasoning.

### A.  APPLICABLE LAW

Rule 15 offers parties one chance to amend *sua sponte*. Fed. R. Civ. P. 15(a)(1). After that, a party seeking to amend the pleadings must either secure the opposing party's written consent or obtain leave from the court. *Id.* at 15(a)(2). A court typically denies leave to amend when the party seeking leave shows bad faith, dilatory motive, failure to cure deficiencies after prior chances to amend, the futility of amendment, or— relevant here—undue delay. *E.g.*, *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018). In this circuit, it is "well settled" that the mere absence of an adequate explanation for delay justifies the denial of leave to amend. *E.g.*, *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993) (denying leave is particularly appropriate when the party requesting leave "has no adequate explanation for the delay").

### B.  ANALYSIS

Ms. Hess admitted that she applied for SSDI benefits on March 20, 2023. Her counsel supplied State Farm with ample documentation to confirm that she had in fact applied for benefits on March 31, 2023. Yet State Farm did not move to amend for eight months. State Farm insists that its delay is excusable because Ms. Hess took months to produce the entirety of her SSDI application. (Doc. # 98 at 2.) The problem with this explanation, however, is that it fails to establish how alleging fraud requires anything more than the knowledge that Ms. Hess had applied for SSDI benefits. Indeed, the proposed amended answer confirms that State Farm did not actually need the records—the proposed changes only refer to Ms. Hess's deposition testimony, not the

SSDI application's contents. *See* (Doc. # 82-1 at 18–19.) Consistent with Rule 11 of the Federal Rules of Civil Procedure, State Farm's fraud allegations needed nothing more than a reasonable basis to assert that Ms. Hess "made false statements with the intent to conceal or misrepresent" that she had applied for SSDI benefits, which it arguably[3] obtained during Ms. Hess's deposition. (Doc. # 58-1 at 48); *see generally Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1134 (10th Cir. 1991) (noting that Rule 11 requires merely "a reasonable inquiry").

Between Ms. Hess's mid-deposition confession and the records that State Farm received eleven days later, confirming that Ms. Hess had indeed applied for SSDI benefits, State Farm could have moved to allege fraud beginning March 31, 2023. Waiting for a complete SSDI record does not justify an eight-month delay.[4] Because State Farm offers no other explanation, such delay is both undue and inexplicable. The Recommendation correctly reached this same conclusion.

Furthermore, allowing State Farm to amend would prejudice Ms. Hess. As the Recommendation noted, had State Farm amended to add the fraud defense, it is likely that Ms. Hess would have taken a different position on settlement because State Farm would have been entitled to an award of costs and fees if it prevailed.

---

[3] Because State Farm moves for summary judgment on the grounds that Ms. Hess violated the "Concealment of Fraud" policy provision, *see* (Doc. # 58), the Court refrains from addressing the merits of that argument here.

[4] Even supposing *arguendo* that State Farm actually needed the SSDI application to amend its pleadings, State Farm's objections conspicuously avoid acknowledging that State Farm could have sought the SSDI application from the SSA itself using Ms. Hess's signed medical release. Or State Farm could have redirected its requests from Ms. Hess's attorney in this case to her SSDI attorney, who ostensibly supplied the SSA with those records in the first place.

State Farm attempts to downplay the potential prejudice by citing *United States v. Hougham* for the proposition that an increased damages award does not constitute "prejudice," but that case is plainly distinguishable. (Doc. # 98 at 3 (citing *United States v. Hougham*, 364 U.S. 310, 316 (1960).) *Hougham* reversed the denial of leave to amend pleadings because the district court erroneously barred the government from electing a new remedy under Section 26(b) of the Surplus Property Act of 1944. Nothing in that case even remotely supports the broad legal principle that "a potential increase in a damage award is not considered 'prejudice' so as to deny a party the ability to amend its complaint." (Doc. # 98 at 3); *but cf. Hougham*, 364 U.S. at 313–17 ("We therefore conclude that under the circumstances of this case the Government had a right to amend its pleadings and that the District Court erred in refusing to permit such amendment."). *Hougham* offers State Farm no support here.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- State Farm's "Objections to Recommendation (Doc. # 98) Regarding Defendant's Motion for Leave to Amend" (Doc. # 82) is OVERRULED.

- The Recommendation (Doc. # 93) is AFFIRMED and ADOPTED as an order of this Court.

- Defendant State Farm Fire and Casualty Company's Motion for Leave to Amend

Defendants' Answer to Amended Complaint and Jury Demand (Doc. # 82) is DENIED.

DATED: February 21, 2024

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
Senior United States District Judge