**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Christine M. Arguello**

Civil Action No. 22-cv-01397-CMA-MEH

AUTUMN HESS,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART, DENYING IN PART, AND RESERVING RULING ON PARTIES' MOTIONS TO STRIKE**

---

This matter is before the Court on six pending motions: Plaintiff Autumn Hess's two Motions to Strike Expert Opinions (Docs. ## 53–54), Defendant State Farm's three Motions to Strike Expert Opinions (Docs. ## 55–57) and Defendant State Farm's Motion for Summary Judgment (Doc. # 58). In short, as explained below, Ms. Hess's first Motion to Strike (Doc. # 53) is GRANTED and her second Motion to Strike (Doc. # 54) is GRANTED IN PART AND DENIED IN PART. As for State Farm, its first Motion to Strike (Doc. # 55) is GRANTED, its second Motion to Strike (Doc. # 56) is DENIED, its Motion for Summary Judgment (Doc. # 58) is DENIED, and the Court GRANTS IN PART AND RESERVES RULING IN PART on its third Motion to Strike (Doc. # 57).

## I.    MOTIONS AT ISSUE

State Farm filed the instant motion for summary judgment on September 11, 2023, which is now fully briefed. (Docs. ## 58, 61, 75.)[1] One month later, on the same day, the parties filed a total of five motions to strike expert testimony. (Docs. ## 53–57.)

This uninsured/underinsured motorist ("UM/UIM") case arises directly from Plaintiff Autumn Hess's December 2020 motor vehicle accident. Defendant State Farm's defenses, however, require discussion of a previous accident involving Ms. Hess in November 2017 for which she sued State Farm because the negligent driver was State Farm's insured. Both accidents implicate injuries to Ms. Hess's jaw, back, and right knee.

### A.    2017 ACCIDENT

In November 2017, a driver collided with an SUV in which Ms. Hess was a passenger ("2017 Accident"). The collision significantly injured her jaw, back, and right knee. (Doc. # 58-1 at 56–62.) For these injuries, Ms. Hess began seeing medical providers for surgical procedures and post-operative care. State Farm insured the other driver, so Ms. Hess later sued State Farm for her injuries from the 2017 Accident. Ms.

---

[1] The Court notes that Ms. Hess's response flagrantly violates this Court's civil practice standards. Under those practice standards, a party responding to a motion for summary judgment must "admit or deny the movant's asserted material facts" in "correspondingly numbered paragraphs . . . accompanied by a brief factual explanation for the reason(s) for the denial and a specific reference to material in the record supporting the denial." Civ. Prac. Standard 7.1D(b)(4). Yet Ms. Hess's response has no logical relationship to the sequentially numbered paragraphs of State Farm's "Undisputed Statement of Material Facts" section. (Doc. # 61 at 6.) The response's paragraph numbers do not correspond to State Farm's paragraph numbers, nor do they even touch on the same subjects. Summary judgment is not an opportunity to challenge this Court to a game of rhetorical Whack-a-Mole. Plaintiff's counsel is encouraged to review this Court's practice standards because such inexplicable noncompliance will carry consequences going forward.

Hess and State Farm settled those claims in July 2019. During that lawsuit, Ms. Hess supplied State Farm with 4,781 pages of her personal medical records. *E.g.*, (Doc. # 61-23 at 120–27.) State Farm kept those records and—relevant to the instant motion for summary judgment—still has them. *Id.*

**B.    2020 Accident**

On September 1, 2020, Ms. Hess obtained her own State Farm automobile collision insurance policy ("2020 Policy"). (Doc. # 58-1 at 1–4.) The 2020 Policy provided Ms. Hess with UM/UIM coverage totaling $100,000. (Doc. # 61-3 at 1.)

The 2020 Policy was in effect when, on December 29, 2020, while Ms. Hess was stopped at an intersection, an inebriated driver rear-ended her vehicle ("2020 Accident"). (Doc. # 13 at ¶¶ 12–15.)

The instant case arises from the UM/UIM claim Ms. Hess made under the 2020 Policy for injuries to her back and jaw that she alleges were sustained during the 2020 Accident. Ms. Hess filed her UM/UIM claim with State Farm on May 6, 2021. (Doc. # 61-10 at 5.) State Farm assigned claims adjuster Ashley Chockley to Ms. Hess's claim. In June 2021, Ms. Hess provided State Farm with a signed medical release form as required to file a claim under the policy. (Doc. # 58-1 at 43, 105–09.) In August 2021, Ms. Hess provided State Farm with a list of her medical providers, many of whom were the same physicians that treated her following the 2017 Accident. (Doc. # 58-1 at 113–18; Doc. # 61-10 at 8.)

Two months later, State Farm informed Ms. Hess that it could not finish adjusting her claims due to "concerns of causation" and indicated that State Farm "need[ed] Ms. Hess's prior records" before it could resolve her claim. (Doc. # 61-10 at 9.) In response,

Ms. Hess's counsel insisted that State Farm resolve her claim immediately because her inability to work rendered her and her family financially unstable. (Doc. # 58 at ¶¶ 13, 16–17, 19, 23–27.) State Farm responded to these requests with its own requests for additional information, such as expense breakdowns and medical records. *E.g.*, (Doc. # 58-1 at 234.) The parties dispute whether Ms. Hess adequately fulfilled State Farm's requests. Ms. Hess then filed the instant lawsuit in state court on April 2, 2022. *See* (Doc. ## 1.)

The parties dispute the extent to which the medical treatments following the 2017 Accident resolved Ms. Hess's back and jaw injuries prior to the 2020 Accident. The parties also dispute the severity of the 2020 collision's impact and whether that impact was the cause of Ms. Hess's need for additional back and jaw treatments. *See generally* (Docs. ## 53–58 and 61.)

## C.    MS. HESS'S APPLICATION FOR SSDI BENEFITS

On November 19, 2020, just before the 2020 Accident, Ms. Hess filed a social security disability income ("SSDI") benefits application with the Social Security Administration. (Doc. # 58-1 at 64, 69.) In her application, Ms. Hess claimed the following disabling conditions: "PTSD in car; spinal fusion in lower back; knee surgeries; headaches from jaw surgeries; total chest reconstruction; shoulder problems; trouble standing; general pain in jaw, back, [and] knees." *Id.* The Social Security Administration denied Ms. Hess's application.

## D.  STATE FARM LEARNS OF MS. HESS'S SSDI APPLICATION

The case proceeded to discovery, during which State Farm asked Ms. Hess via interrogatory to "describe in detail . . . each action/claim" that she "brought for

compensation for personal injuries," which expressly included SSDI. (Doc. # 58-1 at 63.) In response, Ms. Hess objected to relevance, cited Colorado's collateral source rule, and stated that she had "never **received** . . . disability insurance[ ] or federal SSDI disability benefits." (Doc. # 58-1 at 63 (emphasis added) (citations omitted).) On March 29, 2022, during Ms. Hess's deposition, State Farm asked Ms. Hess whether she had ever applied for SSDI benefits. She admitted that she had and provided the name of the counsel she had retained to pursue her claim for SSDI benefits. (Doc. # 58-1 at 64–67; Doc. # 61 at 17.) State Farm obtained her entire SSDI claim file on March 23, 2023. (Doc. # 58 at 7.)

## II.   MOTION FOR SUMMARY JUDGMENT

The Court begins with State Farm's motion for summary judgment (Doc. # 58) because if summary judgment were granted, the motions to strike would be completely mooted.

### A.  LEGAL STANDARDS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable

inferences from that evidence. *Id.* However, conclusory statements based on mere conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Under Rule 56, the moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant must point the court to a lack of evidence for the other party on any essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## B. ANALYSIS

### 1. The SSDI Application Does Not Void the Contract

The parties agree on the facts material to this argument—Ms. Hess's written discovery response, deposition response, and the language of the 2020 Policy's fraud provision. State Farm argues that Ms. Hess voided the contract because, as detailed above, she evaded a written discovery question asking her to describe any SSDI benefits application. State Farm's argues that Ms. Hess committed fraud by failing to disclose that she applied for SSDI benefits. *See* (Doc. # 75 at 7–8.)

Under Tenth Circuit law, proving that an insured voided her insurance policy by violating the policy's fraud clause requires proving that: (1) the plaintiff misrepresented some fact, (2) that misrepresentation was "material," and (3) the insured made that misrepresentation with the intent to deceive. *Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998). Critically, *Wagnon* discussed misrepresentations—not omissions.

State Farm ignores this distinction by leaning heavily on a District of Colorado magistrate judge's unreported opinion that cites another unreported case, both of which inexplicably add "or omissions" to the *Wagnon* test despite *Wagnon* never mentioning omissions. *See* (Doc. # 75 at 7 (citing *Sunflower Condo. Ass'n, Inc. v. Owners Ins. Co.*, 2018 WL 2196089, at *4 (D. Colo. May 14, 2018) (internal citations omitted)).)

Under the correct interpretation of *Wagnon*, State Farm's argument crumbles. The text of the 2020 Policy is clear: fraud encompasses "false statements," not omissions. (Doc. # 51-8 at 48.) Ms. Hess's discovery response, although evasive, was not technically a "false statement"—she stated that she had never received SSDI

benefits, which was true. When State Farm asked Ms. Hess whether she had ever applied for SSDI benefits during her deposition, she candidly said yes. She did not make a "false statement" in either instance.

Consequently, the Court denies State Farm's Motion for Summary Judgment insofar as it argues that Ms. Hess's concealment of her SSDI benefits application voids the 2020 Policy.

2.  Disputed Material Facts Preclude Summary Judgment

In the alternative, State Farm argues that it is entitled to partial summary judgment on the extra-contractual claims, *i.e.*, the bad faith and unreasonable delay claims. State Farm asserts that "no reasonable juror could conclude that State Farm acted in bad faith or unreasonably in not paying Plaintiff's policy-limits demand prior to her filing suit."

On a motion for summary judgment, all facts material to the legal inquiry must be undisputed. As set forth in Section, I.A,2 above, there are genuine issues of material fact that preclude the Court from entering summary judgment in State Farm's favor on Ms. Hess's extra-contractual claims. Thus, the Court denies State Farm's Motion for Summary Judgment with respect to the extra-contractual claims.

### III.   **MOTIONS TO STRIKE**

Having confirmed that summary judgment does not moot all pending motions, the Court next turns to the parties' five motions to strike. Two of State Farm's three motions invoke Rule 26(a)(2) of the Federal Rules of Civil Procedure. State Farm's remaining motion to strike, along with both of Ms. Hess's motions, rely on Rule 702 of the Federal

Rules of Evidence. The Court's analysis begins with Rule 26(a)(2) before addressing Rule 702.

**A. APPLICABLE LAW**

1. Rules 26(a)(2) and 37(c)(1)

Rule 26(a)(2) sets forth the procedural prerequisites to introducing expert witness opinions at trial. To do so, the party proffering expert testimony must disclose the expert's identity to the opposing party and provide the expert's written report. Fed. R. Civ. P. 26(a)(2). The Rule 16 schedule order dictates the timeliness of expert disclosures. In addition to timely disclosure, Rule 26(a)(2) also dictates that experts must prepare a written report summarizing their expert opinions. The contents of that report varies depending on whether the expert is disclosed under Rule 26(a)(2)(B) as a "retained" expert or Rule 26(a)(2)(C) as a "non-retained" expert. *Id.*

If an expert is not timely disclosed or fails to produce a report that satisfies the subsection of Rule 26(a)(2) under which the expert is designated, the noncompliant party cannot call said expert to testify at trial unless "the failure was substantially justified or is harmless." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 951–52 (10th Cir. 2002); *accord* Fed. R. Civ. P. 37(c)(1). The burden of establishing substantial justification or harmlessness rests with the party that failed to comply with the expert disclosure deadline. *Jacobsen*, 287 F.3d at 953. A showing of harm requires addressing four factors: (1) the prejudice or surprise to the objecting party; (2) the party's ability to cure that prejudice; (3) the extent to which introducing the contested testimony would

disrupt trial; and (4) the scienter, if any, of the expert's proponent. *Id.* District courts have considerable discretion over the decision to strike a witness on such grounds.[2]

2. <u>Rule 702</u>

Rule 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The proponent of expert testimony bears the burden of establishing its admissibility. *E.g.*, *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Carrying that burden requires convincing the court by a preponderance of the evidence that (1) the expert is qualified and (2) that the expert's testimony would be relevant, *i.e.*, both helpful to the jury and reliable. *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

---

[2] *Compare Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 640 (D. Kan. 2001) (citation omitted) (referring to striking as a "drastic remedy" that should be used to deter misconduct), *with Cook v. Rockwell Int'l Corp.*, 233 F.R.D. 598, 600 (D. Colo. 2005) (framing the sanction as "mandatory" unless justification or harmlessness is shown).

**B. ANALYSIS**

1. <u>State Farm's Motion to Strike Dr. Glasgow's Rebuttal Opinion</u>

   a. *Context*

State Farm's expert disclosures list Michael Dougherty, DDS—a dentist who prepared a written expert report based on his independent medical examination ("IME") of Ms. Hess. (Doc. # 55-4.) To rebut Dr. Dougherty's IME opinion, Ms. Hess designated Dr. Mark Glasgow, DDS—a dental surgeon and one of her treating physicians—as a rebuttal witness under both Rule 26(a)(2)(B) and (a)(2)(C). (Doc. # 55-5 at 2–3.) According to Ms. Hess, Dr. Glasgow received a copy of Dr. Dougherty's report at 5:21 pm and responded with a rebuttal opinion thirty minutes later. (Doc. # 59 at 6.) Ms. Hess asserts that Dr. Glasgow "read and considered Dr. Dougherty's initial report prior to drafting his rebuttal" in that thirty-minute span—after a day spent performing multiple oral surgeries. *Id.* The resulting rebuttal opinion, a half-page email, does not mention Dr. Dougherty or his report. Instead, the report asserts that: (1) Dr. Glasgow reviewed Ms. Hess's medical records, (2) he knows from treating Ms. Hess that her jaw healed between the 2017 and 2020 crashes, (3) he opines "that the pain and dysfunction that Ms. Hess had on presentation in January[ ] 2021 was related to the December[ ] 2020 motor vehicle crash." (Doc. # 55-6.)

   b. *Legal Standards*

Under Rule 26(a)(2)(D), a rebuttal expert cannot be called to buttress a case-in-chief or advance new legal theories. *103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1217 (10th Cir. 2004); *see also Carnival v. GEICO Cas. Co.*, Civ. No. 15-cv-02581, 2016 WL 9735781, at *2 (D. Colo. Sept. 26, 2016). Rather, expert rebuttal

opinions must "contradict or rebut evidence on the same subject matter identified by another party['s] expert." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Armstrong v. I-Behavior Inc.*, Civ. No. 11-cv-03340, 2013 WL 2419794, at *3 (D. Colo. June 3, 2013).

The Tenth Circuit has never explicitly held, as other circuits have, that rebuttal testimony cannot address matters that could have been raised during the rebuttal-expert-proffering party's case in chief, *i.e.*, rebuttal testimony that attacks "an expected and anticipated portion of the other party's case in chief." *Cf. Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, Civ. No. 14-cv-00134, 2016 WL 1597529, at *3 (D. Colo. April 21, 2016) (alteration, internal quotations, and citation omitted); *see also Vyanet Op. Grp., Inc. v. Maurice*, 2023 WL 1860237, at *3 (D. Colo. Feb. 9, 2023) (Rebuttal experts may introduce new methods of analysis or consider additional data not utilized in the affirmative expert report provided that it relates to the same subject matter and is presented for the purpose of contradicting or rebutting evidence of said subject matter); *accord Gossett v. Weyerhauser Co.*, 856 F.2d 1154, 1156 (8th Cir. 1988) ("Normally, parties are expected to present all of their evidence in their case in chief."); *Morgan v. Comm. Union Assur. Cos.*, 606 F.2d 554, 556 (5th Cir. 1979) ("But simply because one method [of proving medical causation] fails, the other does not become "rebuttal.").

*c. Discussion*

The issue is whether Dr. Glasgow can be allowed to present this causation opinion following the close of Ms. Hess's case-in-chief as a rebuttal to Dr. Dougherty's anticipated testimony.

State Farm contends that Dr. Glasgow cannot be called as a rebuttal witness because, in violation of Rule 26(a)(2)(D), his report does not "cite, mention, or indicate" that it addresses Dr. Dougherty's report, so it is not a true rebuttal. (Doc. # 55 at 6–8.) State Farm also argues that Dr. Glasgow's rebuttal report violates Rule 26(a)(2)(B) because it omits the mandatory "basis and reasons" underlying his opinion. *Id.* at 8–9. In response, Ms. Hess asserts that Dr. Glasgow's opinion rebuts Dr. Dougherty's opinion because they reach the opposite conclusions on causation, thereby contradicting one another. (Doc. # 59 at 1–2, 9–10.) She further insists that a treating physician can opine as to causation based on his own medical records. *Id.* at 2 (citing *Etherton v. Owners Ins. Co.*, 829 F.3d 1209 (10th Cir. 2016).

As a preliminary matter, nothing in the text of Rule 26(a)(2)(D) requires that a rebuttal report explicitly cite the affirmative expert's report—it requires only that the rebuttal report be offered to contradict or rebut opinions of the same subject matter. Citing to *Houle v. Jubilee Fisheries, Inc.*, No. C04-2346, 2006 WL 27204 (W.D. Wash. Jan. 5, 2006), State Farm argues that a rebuttal expert report must "cite, mention, or indicate that the expert was aware of the previous expert report."  However, the *Houle* Court did not establish such a bright-line rule. The *Houle* court merely stated that the report at issue in that case did not "cite, mention, or **otherwise** indicate" awareness of the affirmative expert report. *Houle*, 2006 WL 27204, at *2 (emphasis added). In the instant case, by contrast, Dr. Glasgow's expert disclosure states that he was made aware of Dr. Dougherty's report.

To the extent that State Farm urges this Court to create a new legal rule based on case law from beyond the Tenth Circuit, the Court declines to do so. The issue

presented does not require the creation of such a rule to resolve the dispute. The primary function of this Court is to establish the facts, not create law. State Farm's argument is more appropriately suited for the Tenth Circuit.

Clarifying *Houle*, however, does not save Dr. Glasgow's rebuttal report. The Court reads Rule 26(a)(2)(D) as providing a party the means to procure rebuttal experts prepared to address new issues raised at trial after a party rested its case-in-chief. Rule 26(a)(2)(D), *Advisory Cmty. Notes* (1970 Am.). Dr. Glasgow's report does not specifically rebut the opinion that Dr. Dougherty will offer during State Farm's case-in-chief—that a "tooth malocclusion" caused Ms. Hess's post-2020-collision jaw injuries. *Compare* (Doc. # 55-6), *with* (Doc. # 60-8). Dr. Glasgow's rebuttal opinion makes no mention of tooth malocclusion. Although in an abstract sense, Dr. Glasgow's report contradicts Dr. Dougherty's because it asserts a conflicting causation theory, the level of abstraction necessitated by Rule 26(a)(2)(D) would require that Dr. Glasgow address tooth malocclusion. Without that, the only apparent purpose of Dr. Glasgow's "rebuttal" testimony would be to rehash the testimony he provided during Ms. Hess's case-in-chief. Rule 26(a)(2)(D) does not entitle parties to inundate the jury with cumulative evidence.

As for State Farm's second argument, the Court agrees that Dr. Glasgow's report fails to satisfy Rule 26(a)(2)(B). Dr. Glasgow's half-page opinion offers no basis or reasons supporting his conclusion about the 2020 crash causing Ms. Hess's jaw injuries—only the conclusion itself and brief mention of the facts he reviewed. The issue is not that Dr. Glasgow lacks sufficient qualifications or knowledge of the underlying circumstances to reach this conclusion, but that Ms. Hess neglected to provide State

Farm with a sufficiently detailed explanation of Dr. Glasgow's underlying reasoning as required by Rule 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(B) ("The report ***must*** contain . . . the basis and reasons for [all opinions the witness will express]." (emphasis added)).

Thus, the Court must consider whether Rule 37(c)(1) justifies striking Dr. Glasgow's rebuttal causation opinion. The record shows that Ms. Hess had ample time to supplement Dr. Glasgow's affirmative and rebuttal reports with some actual explanations, but she chose not to do so. Now, with trial looming on the horizon, that strategic litigation choice has consequences—that is, unless she shows substantial justification or harmlessness. But Ms. Hess offers neither, instead opting to blame State Farm for failing to disprove the showings that are her burden under binding precedent. *Jacobsen*, 287 F.3d at 953; (Doc. # 59 at 11–12); *but see* (Doc. # 72 at 6.)

Consequently, the Court GRANTS State Farm's motion to strike (Doc. # 55) Dr. Glasgow's rebuttal opinion and precludes him from testifying as a retained rebuttal expert under Rule 26(a)(2)(B).

2. <u>State Farm's Motion to Strike Non-Retained Physicians' Causation Opinions</u>

a. *Context*

Ms. Hess's expert disclosures name nine non-retained treating physicians: Dr. Mark Glasgow; Dr. Duane Lemieux; Susan Estes, NP; Dr. Julie Paranka; Dr. Mara Isser-Sax; Dr. Rachel Frank and her Physician's Associate, Kevin Shinsako; Dr. Vikas Patel; and Dr. Jason Dragoo. According to the disclosure statement, all nine experts plan to opine on causation—*i.e.*, that the medical services they provided were reasonably necessary to treat injuries caused by the 2020 collision. (Doc. # 57-3 at 20, 22, 26, 29, 31, 34, 37, 39, 43.) They also will opine that the fees they charged for those

medical services were customary, ergo reasonable. *Id.* Further complicating matters, Ms. Hess designated three of the nine experts mentioned above—Dr. Lemieux, Dr. Glasgow, and NP Estes—as both retained and non-retained experts "in an abundance of caution." *E.g.*, (Doc. # 63 at 2; Doc. # 57-3 at 10–17.) Dr. Lemieux, Dr. Glasgow, and NP Estes each prepared and provided written reports. (Docs. ## 55-6, 56-4, 56-5, 56-6.)

      b.   *Legal Standards*

Rule 26(a)(2)(B) provides the default rule governing the disclosure of expert opinions, while Rule 26(a)(2)(C) offers a limited exception. Rule 26(a)(2)(B) requires that a retained expert—one either specifically employed or asked to formulate an opinion for litigation—must prepare a written report which "must" contain six specified types of information. Under Rule 26(a)(2)(C), however, a non-retained expert—an expert whose opinion was not formed in anticipation of litigation—may offer opinions that formed while the expert was performing her occupational duties based on the information available to her at that time. For this type of expert, the disclosure requirements are considerably less demanding: the expert need not produce a report; the expert's proponent must merely convey the subject matter of the anticipated testimony and summarize the underlying facts or opinions expected to emerge at trial. Fed. R. Civ. P. 26(a)(2)(C), *Advisory Cmty. Notes* (2010 Am.). The party's designation of a witness does not dictate which subsection of Rule 26(a)(2) applies, because Rule 26(a)(2) turns "not on the status of the witness, but rather the substance of the testimony." *Bucher v. Gainey Trans. Serv. of Ind., Inc.*, 167 F.R.D. 387, 390 (M.D. Pa. 1996).

A treating physician, for example, is one type of "occupational" expert that could be disclosed under either Rule 26(a)(2)(B) or (a)(2)(C)—depending on the scope of her testimony. If the treating physician's testimony is limited to an opinion formed while treating her patient and based only on information available in that moment, then the physician's expert disclosure need only satisfy Rule 26(a)(2)(C) to let her testify at trial. *Wash. v. Arapahoe Cnty. Dept. of Soc. Servs.*, 197 F.R.D. 439, 442 (D. Colo. 2000) (citation omitted); *see also Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 479 (D. Kan. 2001). However, a treating physician whose proffered opinion rests on information that the physician did not know at the time of treatment could not have formed that opinion during treatment, so she must "step[ ] into the shoes of a retained expert for purposes of Rule 26(a)(2)(B)" and prepare a written report. *Scholl*, 2011 WL 2473284, at *3. Rule 26(a)(2)(C) thus offers litigants a choice: if a non-retained expert is properly disclosed under Rule 26(a)(2)(C), she does not have to produce a written report but, in exchange, her opinion must remain within the bounds of a non-retained expert. *See id.*

c. *Discussion*

State Farm argues that Ms. Hess's non-retained treating physicians cannot opine as to causation or cost-reasonableness because none of them complied with Rule 26(a)(2)(B) yet purport to offer opinions that would exceed the limits of Rule 26(a)(2)(C) by considering information beyond what the experts learned through treatment encounters. (Doc. # 57 at 9–11.) According to State Farm, concluding otherwise would allow Ms. Hess to circumvent Rule 26(a)(2)(B)'s stringent reporting requirements and

enable her to elicit expert trial testimony without adequately notifying State Farm of the experts' underlying rationales. *Id.* at 10.[3]

Ms. Hess, in turn, insists that her treating physicians formed opinions on causation as part of the medical services they rendered and, in her view, the same logic justifies the admission of those physicians' opinions as to whether their bills were reasonably priced. Specifically, she argues that her physicians' causation opinions remain within the scope of their firsthand experiences with Ms. Hess because Ms. Hess described the collision to them during their appointments. (Doc. # 63 at 5–11.) She also concedes that Dr. Dragoo's causation opinion can be stricken because they do not intend to call him at trial. *Id.* at 12.

As reflected in the physicians' treatment records, Ms. Hess told her treating physicians that she was in another car accident. *Id.* at 5–11. A patient telling a physician that she was in a car accident may be important for the subsequent medical treatment provided to that patient, However, that information does not necessarily provide an adequate basis for the treating physician to render an opinion that the car accident caused the injuries for which she sought treatment. A prime example of this distinction was provided by one of Ms. Hess's treating physicians, Dr. Vikas Patel. During his deposition, Dr. Patel testified that his treatment of Ms. Hess's spinal nonunion required knowing that her spine developed a nonunion—not "[w]hen or how that nonunion

---

[3] State Farm also argues that Rules 702 and 403 bar the admissibility of the treating physicians' opinions. (Doc. 57 at 10–12.) But as explained below in the next subsection addressing (Doc. # 56), the Court rejects State Farm's 702 argument. Further, State Farm's Rule 403 argument is only two perfunctory sentences. This Court does not consider insufficiently briefed arguments. *E.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

developed." (Doc. # 68-2 at 2.) The medical records to which Ms. Hess's cites in her Response fail to convince this Court otherwise. Those records prove only that her physicians documented her statement, not that her physicians agreed with Ms. Hess that the accident caused her re-injury. *See, e.g.*, (Doc. # 63 at 10) (Dr. Patel stating that he formed no causation opinion based on Ms. Hess's conveyed recollection of the 2020 Accident). Concluding otherwise would allow non-retained treating physicians to testify regarding opinions formed *post hoc* in anticipation of trial testimony, which would undercut the purpose of Rule 26(a)(2)(C)'s limited exception. However, nothing suggests that these treating physicians are categorically barred from reaching a causation opinion within their medical expertise based on their care of Ms. Hess both before and after the 2020 Accident.

No amount of foundation, however, can salvage the non-retained treating physicians' opinions on whether their bills are reasonably priced. Ms. Hess has not shown that these non-retained treating physicians formed opinions on the medical community's general billing rates during the course of treating her injuries, likely because she cannot. Although these physicians ostensibly know what their offices charged her, understanding what makes a rate reasonable in the medical community inherently requires knowledge that exists beyond the four walls of the medical examination room. Ms. Hess has not shown any reason to second-guess that assumption. The issue is not whether a treating physician's knowledge of her own office's billing rates is within her expertise, but rather, whether Ms. Hess should have had those treating physicians prepare reports to ensure they could testify about that topic. These opinions should have been disclosed in writing as required by Rule

26(a)(2)(B). *George v. Metro. Prop. & Cas. Ins. Co.*, Civ. No. 18-cv-01663, 2020 WL 70424, at *5 (D. Colo. Jan. 2, 2020).

Having determined that Ms. Hess would be violating Rule 26(a)(2)(B) if permitted to call these non-retained treating physicians to opine at trial about their fees, the Court also concludes that Ms. Hess has not carried her burden under Rule 37(c)(1) to defeat State Farm's motion to strike those fee opinions. She neglected to address substantial justification, nor did she address the four *Jacobsen* harm considerations. *See* (Doc. # 63.) The Court will not make these arguments for her. If Ms. Hess wanted these physicians to opine on the reasonableness of their bills, "in an abundance of caution," she should have had them prepare reports compliant with Rule 26(a)(2)(B) or at least prepared an explanation for her failure to adhere to Rule 26(a)(2)(B). She did neither. (Doc. # 63 at 2.)

Consequently, the Court GRANTS State Farm's motion to strike (Doc. # 57) as to the medical-bill-reasonableness opinions of the nine named non-retained treating physicians and the Court RESERVES RULING IN PART as to said witnesses' causation opinions.

As mentioned above, several of Ms. Hess's treating physicians were disclosed under both Rule 26(a)(2)(B) and Rule 26(a)(2)(C). Consequently, the Court granting State Farm's Rule 26(a)(2)(B) objection above does not preclude the causation opinions of those dually designated experts unless their written reports fail to satisfy Rule 26(a)(2)(B) or State Farm objects to the opinions' admissibility on some other grounds. As explained below, however, State Farm does object on separate grounds.

3.  <u>State Farm's Motion to Strike Dr. Lemieux & NP Estes's Causation Opinions</u>

    a.  *Context*

Ms. Hess intends to call Dr. Duane Lemieux, D.D.S., to offer expert opinions on Ms. Hess's jaw injuries and Nurse Practitioner Susan Estes to do the same regarding Ms. Hess's spinal injuries. Because both experts were dually designated under Rule 26(a)(2)(B) and Rule 26(a)(2)(C), the Court's analysis of Rule 26(a)(2)(C) with respect to non-retained experts does not preclude these opinions. Under Rule 702, however—a separate basis for exclusion—State Farm objects to both experts' causation opinions by asserting that the opinions are inadmissible irrespective of whether Ms. Hess properly disclosed them during discovery.

NP Estes earned her Bachelor of Science and Master of Science degrees, both in nursing, from the University of Southern Indiana and Northern Kentucky University, respectively. (Doc. # 56-7 at 1.) She has been a practicing NP since 2005 and, in her professional capacity, NP Estes supervises nurse-practitioner students at educational institutions including the University of Colorado, University of Cincinnati, and Walden University. *Id.* at 2. NP Estes also claims to specialize in spinal injuries. In that vein, she works as a "first assist" in spinal surgeries and has co-authored three academic peer-reviewed articles on spinal medical issues. *Id.* at 4. Based on her experience, treatment of Ms. Hess's spinal injuries after her 2017 and 2020 car accidents, and her review of Ms. Hess's entire medical records, NP Estes opines that the 2020 car accident caused Ms. Hess's spinal injury because, as "someone with a prior lumbar fusion[, she was] at higher risk of an injury." (Doc. # 56-5 at 2.)

Dr. Lemieux earned his Doctor of Dental Medicine in 2018 and completed an oral maxillofacial surgery residency at Denver Health Medical Center.[4] In his practice, Dr. Lemieux routinely performs oral surgery, temporomandibular joint arthroscopies, jaw surgery, and various services relating to dental implants. (Doc. # 56-3 at 15.) Based on his experience, treatment of Ms. Hess's jaw injuries, and review of her medical records, Dr. Lemieux opines that the "motor vehicle collision in 2020" caused Ms. Hess's "temporomandibular joint dysfunction including arthralgia, internal derangement[,] and myofascial pain with muscle spasms." (Doc. # 56-6.) Dr. Lemieux offers no further explanation as to how he reached these conclusions.

b.  *Legal Standards*

Under Rule 702, a court's assessment of a proffered expert opinion's relevance necessitates an inquiry into whether the methods underlying that opinion are reliable. A relevant opinion must rest on reliable methodologies and sufficient data. *Daubert*, 509 U.S. at 592–93; *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). Courts typically consider four nonexclusive factors in assessing whether an opinion's reasoning and methodology are reliable:

i.   Whether the theory at issue can be and has been tested;
ii.  Whether the theory has been subject to peer review and publication;
iii. Whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and
iv.  Whether the theory has been accepted in the relevant scientific community.

*Daubert*, 509 U.S. at 593–94. This list of factors is neither definitive nor exhaustive.

---

[4] The Court notes that neither party provided Dr. Lemieux's *curriculum vitae*, so the Court must resort to citing Ms. Hess's expert disclosures.

"[W]hen an expert purports to apply principles and methods in accordance with professional standards, and yet reaches a conclusion that other experts in the field would not reach, the trial court may fairly suspect that the principles and methods have not been faithfully applied." Fed. R. Evid. 702, *Advisory Cmty. Notes* (2000 Am.). However, the inverse is also true; if an expert claims to apply principles and methods to reach an unremarkable conclusion, then the opinion's reliability is less suspect absent a showing to the contrary. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005). Further, "an expert's testimony need not eliminate all other possible causes of the injury," but the opinion must cite more than temporal connection alone. *Etherton v. Owners Ins. Co.*, 35 F. Supp. 3d 1360, 1371 (D. Colo. 2014); *Goebel*, 346 F.3d at 999.

c.  *Discussion*

State Farm argues that Dr. Lemieux and NP Estes' causation opinions are unreliable under Rule 702(b)–(d) because neither expert reviewed documentation of the accident such as police reports or photos.[5] Further, State Farm contends that neither expert's opinion discloses the principles or methods used to form said opinions. (Doc. # 56 at 7–9.)[6] For her part, Ms. Hess counters with citation to her expert disclosures, which specify that both experts' opinions rely on their firsthand knowledge from

---

[5] State Farm also argues that these opinions must be excluded under Rule 403 without making any actual argument beyond the conclusion itself. The Court will not consider inadequately briefed arguments. *Astrue*, 695 F.3d at 1161.

[6] State Farm also argues that neither Dr. Lemieux nor NP Estes are qualified to opine on causation or the force involved in the 2020 Accident because they have no specialization in biomechanical engineering or accident reconstruction. (Doc. # 56 at 7–9.) However, this argument has been routinely rejected in federal courts because it conflicts with binding precedent. *See Etherton*, 35 F. Supp. 3d at 1372. So long as an expert remains within "the reasonable confines of his subject area," the lack of specialization does not affect the expert opinion's admissibility—only its weight. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).

medically examining her, their treatment notes, their training as physicians, their review of her entire medical record, and their experience practicing medicine. (Doc. # 60 at 8–13.) Both parties rely heavily on *Etherton v. Owners Insurance Company*. *See* (Doc. # 60 at 5 (citing *Etherton*, 829 F.3d at 1218–19); Doc. # 71 at 5 (same).)

Before applying Rule 702, the Court must correct the parties' interpretations of *Etherton*. Both parties read *Etherton* as creating a three-prong test governing the admissibility of any medical provider's causation opinion. But in *Etherton*, the tripartite framework came from the treating physician's characterization of his own decision-making process. *See Etherton*, 829 F.3d at 1218 ("Dr. Ramos employed a three-step methodology to determine the injury's cause."). The insurance-company appellant appealed the findings on each step of the expert's method, and the Tenth Circuit addressed those arguments as presented. The Tenth Circuit neither proposed the expert's characterization as a three-prong analytical inquiry governing all future cases nor adopted it as such. *See id.* at 1220–1222. The parties mistake *Etherton*'s resolution of narrow issues as being the pronouncement of a legal framework. The *Etherton* Court did no such thing.

Having disabused the parties of the notion that *Etherton* created a test that dictates the outcome of this case, the Court turns to the parties' arguments. Both experts are experienced medical professionals who directly treated Ms. Hess for the same injuries before and after the 2020 Accident using the training and methods that entitle them to carry their respective medical licenses. These opinions were formed through generally acceptable medical practices, which lessens this Court's concerns about admissibility given that the underlying issue is relatively straightforward. *Cf. Bitler*,

400 F.3.d at 1233, 1235 (opining on whether copper sulfide particles in a gas-powered water heater can cause a fire by interfering with the seal of the safety valve). Considering the application of generally acceptable medical practices, the lengthy treatment history—both before and after the 2020 collision—and the obvious temporal consideration, these circumstances do not present "too great an analytical gap" between the facts and the opinions formed. *Joiner*, 522 U.S. at 146.

Moreover, insofar as State Farm argues that these experts needed to review the accident report or photos, this premise assumes that the accident report and photos offer facts that Ms. Hess's recollection of the crash does not. However, both the accident report and Ms. Hess's recollection go to the same issue: the impact of the collision. Regardless of which source is correct, this argument affects only the testimony's weight, not its admissibility. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

In sum, the Court agrees with Ms. Hess that Dr. Lemieux and NP Estes can opine as to causation based on their occupational experience and training. This conclusion, however, does not lessen Ms. Hess's burden to lay sufficient foundation that these experts' opinions fit within the limitations of Rule 26(a)(2)(C). Therefore, the Court DENIES State Farm's motion to strike (Doc. # 56) the causation opinions of Dr. Lemieux and NP Estes.[7]

---

[7] The Court does, however, have some concern about whether the Dr. Lemieux and NP Estes's written reports were adequately disclosed under Rule 26(a)(2)(B). However,

4. <u>Ms. Hess's Motion to Strike Dr. Dougherty's Psychiatric Diagnosis</u>

a. *Context*

As mentioned above, State Farm disclosed Dr. Michael Dougherty, DDS—a dental surgeon—to offer an expert opinion on Ms. Hess's dental injuries. (Doc. # 53-2 at 1; Doc. # 69-1 at 2.) Dr. Dougherty earned his Bachelor of Arts in biology in 1966 from Drake University and his Doctor of Dental Surgery in 1970 from the University of Iowa. (Doc. # 53-5 at 1.) His *curriculum vitae* describes a series of professional memberships, activities, and presentations revolving around general dentistry with an emphasis in dental ergonomics and temporomandibular joint disorders. *Id.* at 3. He has also published eight articles about dentistry—some in peer-reviewed journals like the Dental Products Report, others in news periodicals like the Denver Post. *Id.* at 1.

Based on his professional experience and his IME of Ms. Hess, Dr. Dougherty formed two opinions: (1) a tooth malocclusion caused Ms. Hess's jaw injuries and (2) Ms. Hess's self-reported pain symptoms are inconsistent enough to establish that she has "factitious disorder," also called Munchausen's syndrome—a psychological condition where a patient studies the symptoms of an illness and, despite not actually experiencing those symptoms, presents them to a physician for the purpose of being seen as sick.[8]

---

State Farm did not object on these grounds, and the Court will not strike these experts *sua sponte*.

[8] *E.g.*, *Overview: Munchausen Syndrome*, Nat'l Health Serv. Eng.: Mental Health Conditions, www.nhs.uk/mental-health/conditions/munchausen-syndrome/overview/#:~:text=Mucnhausen%20syndrome%20is%20a%20psychological,are%20thecentre%20of%20attention (last updated September 16, 2022).

b.  *Legal Standards*

Under Rule 702, an expert's qualifications depend on the expert's "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *e.g.*, *Roe v. FCA US LLC*, 42 F.4th 1175, 1180–81 (10th Cir. 2022). This standard is quite liberal. *See United States v. Gomez*, 67 F.3d 1515, 1525–26 (10th Cir. 1995). Minor deficiencies in an expert witness's qualifications affect the weight of an expert's testimony, not admissibility. *Robinson*, 447 F.3d at 1100 (internal quotation and citation omitted). A trial court abuses its discretion by excluding an expert witness that is generally qualified. *See Obeslo v. Great-West Cap. Mgmt., LLC*, No. 16-cv-00230-CMA-SKC, 2019 WL 1651844, at *3 (D. Colo. Apr. 17, 2019); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("We have eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications.").

c.  *Discussion*

Ms. Hess does not challenge Dr. Dougherty's dental opinions. Rather, she limits her objection to his factitious disorder diagnosis and the family counseling records cited and incorporated by his psychiatric opinion. (Doc. # 53 at 8–9, 11–12.) Ms. Hess first argues that Dr. Dougherty's dental training does not qualify him to formally diagnose factitious disorder—a psychological disorder—and provides deposition testimony wherein Dr. Dougherty himself conceded that his medical license did not authorize him to diagnose factitious disorder. *Id.* at 8–9; (Doc. # 69-1 at 2). She also argues that Dr. Dougherty's factitious disorder diagnosis rests on insufficient facts and methodology because he cites perceived inconsistency in one dental appointment that Dr. Dougherty

mistakenly believed occurred nine days after the 2020 collision when, in fact, the appointment occurred **two years later**. (Doc. # 69 at 4–6.) Concerning her family therapy records, Ms. Hess argues that those records are irrelevant to the material issue at hand—the cause of her jaw injury. (Doc. # 53 at 11–12.)

In response to Ms. Hess's first argument, State Farm essentially contends that any healthcare provider can diagnose factitious disorder based on medical records relevant to that provider's area of expertise—*e.g.*, a dentist can diagnose factitious disorder arising from a patient fabricating symptoms of a dental condition. (Doc. # 64 at 3–6.) Second, State Farm argues that Dr. Dougherty's factitious disorder diagnosis rested on adequate methods because the only way to test for factitious disorder is a review of the medical records for inconsistency. *Id.* at 7. Third, State Farm insists that the counseling records will aid the jury in determining causation because they bear on Dr. Dougherty's factitious disorder diagnosis, which would provide an alternative causation theory. *Id.* at 8–12.

Dr. Dougherty's factitious disorder diagnosis is fatally flawed in two respects. First, Dr. Dougherty himself admits that his medical license does not authorize him to formally diagnose a psychological or psychiatric diagnosis, which would include factitious disorder. (Doc. # 69 at 4–6; Doc. # 69-1 at 2.) In fact, he specifically stated that his opinion was not an official factitious disorder diagnosis but, rather, only his suspicion. (Doc. # 69-1 at 3, 5 (claiming that he only "suspect[s]" it).) Given that a district court's gatekeeping function requires distinguishing "genuinely scientific" opinions, which are admissible, from "unscientific speculation offered by a genuine scientist," which are not, this concession alone is dispositive. *Rosen v. Ciba-Geigy*

*Corp.*, 78 F.3d 316, 318 (7th Cir. 1996); *see generally Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (condoning the exclusion of expert opinions that amounts to the expert's mere *ipse dixit*).

Further, Dr. Dougherty's diagnosis is objectively unsupported given his misreading of the record. He relies entirely on Ms. Hess's self-reported pain being a "10/10" despite supposedly keeping her mouth open for a prolonged period at a dental appointment occurring nine days after the 2020 collision. (Doc. # 69-2 at 11.) But the appointment he references occurred not nine days later, but two years later. (Doc. # 69 at 4–5 (citing (Doc. # 69-3).) His factitious disorder diagnosis cites no other data point. Why this opinion was not voluntarily withdrawn remains a mystery given the materiality of Dr. Dougherty's misinterpretation of Ms. Hess's medical records.

Consequently, the Court GRANTS Ms. Hess's motion to strike (Doc. # 53) Dr. Dougherty's opinion insofar as it opines on factitious disorder. Further, because Dr. Dougherty cannot opine on factitious disorder, Ms. Hess's family counseling records appear to be irrelevant and are also stricken.

   5.  <u>Ms. Hess's Motion to Strike Mr. Craver's Legal Conclusions</u>

      a.  *Context*

John P. Craver is a practicing civil litigator with forty years of experience in personal injury motorist insurance claims and bad faith insurance claims. (Doc. # 54-3 at 1.) His *curriculum vitae* lists speaking engagements mostly concerning strategic considerations when litigating bad faith insurance cases. *Id.* at 1–2. He claims to have been "recognized as an expert on insurance claims handling practices in many state

and federal courts."[9] Mr. Craver's opinions in this case summarize the statutes and case law applicable to UM/UIM claims and opine on whether State Farm's handling of Ms. Hess's claim accorded with common industry practices, leading him to conclude that State Farm acted reasonably. *See generally* (Doc. # 54-3.) State Farm intends to offer Mr. Craver's expert opinion on insurance "claims handling practices" and State Farm's "handling of [Ms. Hess's UM/UIM] claim." *Id.* at 1.

In two prior District of Colorado cases, insurance-company defendants tried and failed to introduce Mr. Craver's opinions as expert testimony—in identical or substantially similar format to what State Farm offers here. *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170 (2018) (Brimmer, J.); *Excel Constr. Grp. v. GuideOne Mut. Ins. Co.*, Civ. No. 20-cv-03848, 2023 WL 2574373 (D. Colo. Mar. 20, 2023) (Rodriguez, J.). In *TBL Collectibles*, Judge Brimmer struck almost all of Mr. Craver's opinions minus (1) those that opine on the insurer's compliance with industry practices as informed by Colo. Rev. Stat. § 10-3-1104 and Colo. Code Regs. § 702-5:5-1-14 and (2) those that opined on "the absence of standards governing the adequacy of documentation proving a loss." *TBL Collectibles*, 285 F. Supp. 3d at 1184, 1186, 1188.

---

[9] It seems that, of the cases Mr. Craver lists in his *curriculum vitae*, Mr. Craver has only testified at trial as an expert witness twice, neither of which involved testing his opinions under Rule 702. In the first federal case in which Mr. Craver testified (Case No. 16-cv-00759-CMA-SKC, Doc. # 157 at 184–219), the opposing party never lodged a Rule 702 objection, and in the second case (Case No. 18-cv-01665-RM), Mr. Craver's expert opinion was much narrower, explaining how an attorney defending a UM/UIM claim works alongside the insurer-client—materially distinguishable from the broadly objectionable opinions he offers here. The remainder of his "many" instances testifying in court are either depositions or state court cases, none of which involve a Rule 702 inquiry. *See* (Doc. # 54-3 at 2.) As for the cases detailed *supra*, two separate divisions of this Court struck almost all of Mr. Craver's opinions when Rule 702 objections were lodged.

In *Excel Construction Group*, Judge Rodriguez struck all of Mr. Craver's opinions struck by Judge Brimmer because the opinions were similar, if not verbatim, in substance. *Excel Constr. Grp.*, 2023 WL 2574373, at *8. Rather than parse out his remaining opinions line-by-line, Judge Rodriguez set forth criteria governing Mr. Craver's trial testimony. *Id.* at *9–11 (precluding opinions on (1) public policy considerations unmoored from the facts of the case and (2) opinions on issues that were not excluded or otherwise limited by the insurance policy at issue).

    b.  *Legal Standards*

As set forth above, under Rule 702, an expert's opinion must be relevant. Besides reliability, mentioned above, the other half of relevance is helpfulness. Helpful opinions implicate a material fact without offering a legal conclusion. *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (en banc) (citation omitted); *see also United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015); *EEOC v. W. Distrib. Co.*, 643 F. Supp. 3d 1205 (D. Colo. 2022). Legal opinions are categorically excluded as unhelpful under Rule 702 for two reasons. First, legal opinions confuse juries by offering explanations of applicable law that compete with jury instructions; second, legal opinions direct the jury's understanding of which result to reach, which risks impermissibly usurping the role of the jury altogether. Fed. R. Evid. 704, *Advisory Cmty. Notes* (1975 Enactment); *see also Specht*, 853 F.2d at 807 (citation omitted); *TBL Collectibles*, 285 F. Supp. 3d at 1184. Consequently, courts routinely exclude expert opinions that assert how the law should be applied. *Cf. United States v. Aruntoff*, 1 F.3d 1112, 1118 (10th Cir. 1993) (finding harmless error in admitting expert testimony that correctly stated the law without attempting to apply it to any facts); *see also King v. Allstate Ins. Co.*, No. 11-cv-00103,

2013 WL 3943607, at *5 (D. Colo. July 31, 2013) (permitting insurance experts to testify "about [their] understanding of the law and how it impacts [their] understanding of the standards that govern the insurance industry" because case law forms and affects those standards.).

    *c. Discussion*

    Ms. Hess objects to Mr. Craver's opinions by reference to three categories—legal opinions, conclusory or speculative opinions lacking factual support, and opinions on insurance industry practice standards—which are numbered as Statements 9, 15 through 24, and 27 through 32. (Doc. # 54 at 2, 4–7, 8–10.)[10] Ms. Hess challenges these statements in three steps. First, she asserts that Statements 9 and 15 through 24 are verbatim or functionally equivalent to opinions previously struck by Judges Brimmer and/or Rodriguez, and the same reasoning warrants exclusion here. (Doc. # 54 at 6–7.) Second, she argues that Statements 27 through 32 are unsupported *ipse dixit* opinions. *Id.* at 8–9. Third, she urges the Court to preclude opinions concerning general industry practices "unless such testimony is tethered to the facts of this case." *Id.* at 10 (quoting *Excel Constr. Grp.*, 2023 WL 2574373, at *10). Ms. Hess also requests that this Court exercise its inherent power to sanction and order State Farm to pay her attorney's fees and costs for filing this motion because State Farm should have known not to file the same boilerplate expert report that was almost completely rejected in two prior cases. *Id.* at 2, 10–11.

---

[10] State Farm agreed to withdraw some of these opinions, hence the unorthodox numerical sequence. (Docs. ## 54-9, 54-10.)

State Farm, for its part, stresses that both cases permitted Mr. Craver to opine on compliance with industry practices, ergo those statements should be admissible and they alone show that sanctions would be inappropriate. (Doc. # 65 at 13–14.) The remainder of State Farm's response focuses on distinguishing Mr. Craver's opinions from *TBL Collectibles* and *Excel Construction Group*. *See generally id.* at 1–13.

The applicable law has not changed since *TBL Collectibles* was first decided. "There is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness." *Specht*, 853 F.2d at 808. With that difference in mind, this Court scrutinized each of Mr. Craver's opinions in the instant case and those offered in *TBL Collectibles* and *Excel Construction Group*, and the Court concludes that most of Mr. Craver's opinions exhibit the same flaws that led to their exclusion in both prior cases. Statement 9 is nearly identical to statements struck by both Chief Judge Brimmer and Judge Rodriguez. (Doc. # 54-5 at 13); (Doc. # 54-7 at 8 (citing Doc. # 54-8 at 8).) Statements 15 and 20 are identical to those stricken in *Excel Construction Group*. (Doc. # 54-7 at 8); Doc. # 54-8 at 8.) Statements 18 through 22 are either verbatim or identical in substance to statements struck by Judge Rodriguez and Chief Judge Brimmer. (Doc. # 54-7 at 8 (citing Doc. # 54-8 at 10)); (Doc. # 54-5 at 13–14); (Doc. # 54-8 at 8 n.4); (Doc. # 54-5 at 14–15); (Doc. # 54-7 at 8). Both judges struck Statement 16 for usurping the role of the trial judge by "rephras[ing] the pertinent legal standards and express[ing] the expert's beliefs as to the legal rights and obligations of the parties." (Doc. # 54-7 at 8 (citing Doc. # 54-5 at 13).) Both judges struck Statements 23 and 24 because those opinions attempted to instruct the jury. (Doc. # 54-5 at 13–14; Doc. # 54-8 at 8 n.4.)

The remaining numbered Craver opinions yield mixed results. Statements 27 and 29 are *ipse dixit*; indeed, they are both speculative on their face by implicitly acknowledging Mr. Craver's uncertainty as to the underlying premise on which each opinion rests. *See* (Doc. # 54 at 8.) Statements 26, 28, 31, and 32, however, appear to rest entirely on Mr. Craver's experience representing State Farm and other insurers. *See id.* at 9. The perceived factual deficiencies underlying Statements 26, 28, 31, and 32 can be explored on cross-examination—much like Dr. Lemieux's and NP Estes's consideration of Ms. Hess's recollection of the 2020 crash but not the accident report. *See* (Doc. # 54-7 at 10 (holding the same regarding Mr. Craver's opinions on "what 'usually' happens in an insurance claim" based on "his own 'limited work experience'").)

As Judge Rodriguez did, this Court will establish rules governing Mr. Craver's trial testimony rather than parse out his remaining opinions line-by-line. *Excel Constr. Grp.*, 2023 WL 2574373, at *9–11. Mr. Craver cannot offer opinions on public policy considerations that are not directly connected to the facts of the instant case. Nor can he opine on issues that are not implicated by the insurance policy at issue.

Finally, the Court finds that sanctions are inappropriate given the broad discretion that trial courts have over expert opinions and the fact that at least some of Mr. Craver's opinions have survived Rule 702 thrice now.

Consequently, as detailed above, the Court GRANTS IN PART AND DENIES IN PART Ms. Hess's motion to strike (Doc. # 54) Mr. Craver's opinions. The Court directs the parties to collaborate on a proposed limiting instruction to clarify that the Court will instruct the jury on the law and, to the extent that Mr. Craver's testimony differs from the Court's pronouncement of the law, the Court's instructions prevail.

## IV. <u>CONCLUSION</u>

Based on the foregoing, the Court ORDERS as follows:

- Plaintiff's first motion to strike (Doc. # 53) is GRANTED.

- Plaintiff's second motion to strike (Doc. # 54) is GRANTED IN PART AND DENIED IN PART as detailed above.

- Defendant's first motion to strike (Doc. # 55) is GRANTED.

- Defendant's second motion to strike (Doc. # 56) is DENIED.

- Defendant's third motion to strike (Doc. # 57) is GRANTED IN PART AND RULING IS RESERVED IN PART.

  - It is GRANTED with respect to non-retained treating physicians' proffered expert opinions on whether the fees they charge for treatment are medically reasonable.

  - RULING IS RESERVED with respect to whether the non-retained treating physicians can offer causation opinions.

- Defendant's Motion for Summary Judgment (Doc. # 58) is DENIED.

DATED: March 8, 2024

BY THE COURT:

_Christine M Arguello_____

CHRISTINE M. ARGUELLO
Senior United States District Judge